**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE SCOTTS COMPANY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE<br>COMPANY,<br><br>    Defendant. | Civil Action No. 2:06cv899<br><br>Judge Graham<br><br>Magistrate Judge King |

**LIBERTY MUTUAL INSURANCE COMPANY'S MEMORANDUM IN
OPPOSITION TO THE SCOTTS COMPANY LLC'S MOTION
TO ENTER ELECTRONIC DISCOVERY ORDER**

Defendant Liberty Mutual Insurance Company ("Liberty") respectfully submits this

memorandum of law in opposition to Plaintiff The Scotts Company LLC's ("Scotts") Motion to

Enter Electronic Discovery Order ("Scotts' Motion").

## I.     PRELIMINARY STATEMENT

By this motion, Scotts seeks, without any of the required showing of cause, the entry of

an order (to which Scotts claims it is entitled as a matter of right) compelling Liberty to:

- Provide an outside vendor unfettered access to its computer systems, networks, databases and backup systems.

- Locate workstations and laptops dating back nearly ten years for eighteen individuals, eleven of whom are lawyers or paralegals and many of whom had no appreciable involvement with any events relevant to this action.

- Permit searches to be run on its computer systems for common names ("Scott," "Diane," "Joyce," "Bill," "Art"), the name of the world's largest insurance broker ("Marsh"), and random number and letter sequences (*e.g.*, "9633" and "I within 3 of T within 3 of T"), all of which are broad enough to encompass millions of documents.

- Review at its own cost the results of these searches, likely to number in the millions of documents, for relevance and privilege.

*See* Ex. 2 to Scotts' Motion ("Proposed ESI Order").

Scotts is simply incorrect when it claims that it is entitled to its Proposed ESI Order as a matter of right. Established case law in this Circuit and elsewhere holds that a party seeking to impose outside forensic review on its opponent's computer system first must demonstrate that the responding party has engaged in discovery misconduct. As fully outlined below, Scotts has not and cannot make such a showing.

Indeed, the only real justification offered by Scotts is the claim that electronically stored information ("Electronic Data")[1] is subject to discovery under the Federal Rules of Civil Procedure. Liberty, however, does not dispute this non-controversial contention. In fact, Liberty has produced over 21,000 pages of documents to Scotts, including documents maintained both in electronic form and in paper form. From this basic proposition, however, Scotts makes the unsupported and unsupportable leap to the conclusion that it is entitled to the entry of its onerous Proposed ESI Order *as a matter of right*.

Scotts misleadingly contends that the right to discovery of Electronic Data and the right to unfettered access to Liberty's computer systems are one and the same. Notwithstanding Scotts' efforts to downplay the relief it seeks ("Scotts simply wishes to have a protocol established for the production of such ESI," Scotts Motion at 2), it is as meritless as it is onerous. The case law (both before and after the recent amendments to the Federal Rules of Civil Procedure regarding electronic discovery) clearly establishes that the forensic relief sought by Scotts is extraordinary and granted only in the exceptional case.

---

[1] As used herein, the term "Electronic Data" is intended to have the same meaning ascribed to "electronically stored information" in the Federal Rules of Civil Procedure, as amended effective December 1, 2006.

Scotts attempts to justify the relief it seeks by noting that Electronic Data was not produced by Liberty in its native format.  There is no dispute that Liberty has searched for and produced extensive Electronic Data.  In accordance with the rules, Liberty produced printouts of this Electronic Data.  Scotts neither specified the format for production of Liberty's Electronic Data (as it is permitted to do at the time of the request pursuant to the 2006 Amendments) nor objected to Liberty's extensive production of Electronic Data in printed form.  Notwithstanding its failure to do so, Scotts now contends (in contravention of the express language of the 2006 Amendments) that Liberty should be forced to produce *the same Electronic Data* in a different format.  Scotts cannot use its silence regarding the format in which data was produced as a basis to require Liberty to re-produce documents or as a basis for entry of the order sought by this Motion.  As described in detail below, Liberty has complied with all of its obligations under the rules.  Therefore, because no basis exists for Scotts' drastic request, the Court should deny Scotts' Motion.

## II.     STATEMENT OF FACTS

### A.      The 2006 Amendments To The Federal Rules Of Civil Procedure

Effective December 1, 2006, Federal Rules of Civil Procedure 16, 26, 33, 34, and 45 were amended to address the handling of Electronic Data in the discovery process ("2006 Amendments").  For purposes of this motion, the relevant changes and additions introduced in the 2006 Amendments are summarized below:

- Rule 26(a)(1)(B) now expressly includes Electronic Data among the materials subject to initial disclosures.
- Rule 26(b)(2)(B) now provides, in relevant part, that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."
- Rule 26(f)(3) now specifically instructs the parties to include, among other topics for discussion during their conference mandated by the rule, "any issues relating to

disclosure or discovery of electronically stored information, including the form or forms in which it should be produced."

- Rule 34(a) was amended to read (changes indicated in bold type): "Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, **test, or sample** any designated documents **or electronically stored information** – including writings, drawings, graphs, charts, photographs, **sound recordings, images,** and other **data or** data compilations **stored in any medium** from which information can be obtained... ."

- Rule 34(b) now explicitly states, in relevant part, that a request pursuant to Rule 34 "may specify the form or forms in which electronically stored information is to be produced." Rule 34(b) further provides that "[u]nless the parties otherwise agree, or the court otherwise orders: ... (ii) if a request does not specify the form or forms for producing electronically stored information, a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable; and (iii) a party need not produce the same electronically stored information in more than one form."

### B. The Parties' Rule 26(f) Conference And Report

Following Scotts' filing of this action on October 25, 2006, the parties met on November 21, 2006 and conducted their conference pursuant to Federal Rule of Civil Procedure 26(f). *See* Declaration of Alison McLaughlin, filed concurrently herewith, at ¶ 2 ("McLaughlin Decl."). The parties filed their Rule 26(f) Report on December 4, 2006, which included language drafted by Scotts with regard to electronically stored information. *See id.* at Ex. A; ¶ 2. Specifically, in the section of the Rule 26(f) Report filed with the Court asking whether the case presents "issues relating to disclosure or discovery of **electronically stored information**, including the form or forms in which it should be produced[,]" the parties jointly stated that there was "[n]othing unusual contemplated at this time." *Id.* at Ex. A, section 6(c) (emphasis in original).

### C. Scotts' Requests For Production Of Documents And Things

On December 8, 2006, Scotts served its First Request for Production of Documents and Things ("First Document Requests"). *See* Ex. A to Affidavit of Keith A. Meyer in Support of Scotts' Motion ("Meyer Aff."). Scotts' First Document Requests specifically seek, *inter alia*, "electronic documents." *See id.* at Request Nos. 28, 29. The First Document Requests do not

specify a format for production of Electronic Data maintained by Liberty.  *See id.*  On March 2, 2007, Scotts served its Second Request for Production of Documents and Things ("Second Document Requests," collectively with the First Document Requests, "Scotts' Requests").  *See* Ex. B to McLaughlin Decl.  Again, Scotts asked for certain Electronic Data, *see id.* at Request Nos. 1-4, but did not specify a format for production thereof.  At no time before or since Scotts' service of its two sets of document requests has counsel for Scotts ever requested that Liberty produce Electronic Data in any specific format.  *See* McLaughlin Decl. at ¶ 3.

>  **D.**   **Liberty's Search For And Production Of Documents To Scotts**

Since January 2007, including documents produced in *ITT Cannon, Inc. v. Affiliated FM Insurance, et al.,* Cal. Sup. Ct. (LA Cty), Case No. BC290354 ("California Litigation") and treated, by agreement of the parties, as if they were produced in the instant case, Liberty has produced more than 21,000 pages of documents to Scotts.  *See* McLaughlin Decl. at ¶ 4.  Liberty substantially completed its production of documents responsive to Scotts' Requests on April 25, 2007.  *See id.*

In connection with the California Litigation, Liberty reviewed its files for documents relating to Scotts and related entities.  *See* Declaration of Kimberly Olson, filed concurrently herewith, at ¶ 4 ("Olson Decl.").  Liberty's production of documents in the California Litigation included the results of a search which encompassed files maintained by Liberty departments and business units across numerous geographical locations and operational roles, including, among others, underwriting, sales, accounting, reinsurance, credit, claims, development, production, and distribution.  *See id.*  The files searched included paper and electronic files maintained by each department or unit, including files located in off-site storage locations.  *See id.*

Liberty's search for documents responsive to Scotts' Requests in the above-captioned case included the identification and collection of paper and electronic files, to the extent they existed, for sixteen Liberty employees or former employees who had any involvement with Scotts from 1998 to 2000. *See id*. at ¶¶ 5-8.  In addition, in response to Scotts' First Document Requests, Liberty searched paper and electronic files for, among other documents, exemplar policy jackets, underwriting and claims handling materials, personnel files, organizational charts, and correspondence. *See id*. at ¶ 7.  Liberty also generated "loss runs" from its electronic database for the alleged policy numbers provided by Scotts, to the extent that searches for such numbers produced any results. *See id*.  In response to Scotts' Second Document Requests and Second Set of Interrogatories, Liberty further searched its paper and electronic files for, among other documents, "Procedure Manuals," compensation documents, and records maintained on microfiche or microfilm. *See id*. at ¶ 8.

Liberty's searches of paper files described herein included identification and collection of files maintained by individuals having involvement with Scotts (including former employees) from the offices in which those individuals work, as well as off-site storage locations. *See id*. at ¶ 9.  Liberty's searches of electronic files described herein included identification and collection of Electronic Data (including email, attachments to email, word processing documents, spreadsheets, and database entries) maintained on individual workstations as well as on shared servers. *See id*. at ¶ 10.  This process included a search for remaining electronic files belonging to former employees. *See id*.

The only Electronic Data Scotts requested which Liberty has not endeavored to review and produce are "electronic documents relating to Scotts that have been deleted from Liberty Mutual's network or individual hard drives." Ex. A to Meyer Aff. at Request No. 29.  In its

responses to Scotts' Requests and in subsequent discussions, Liberty informed Scotts that, pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), it would not produce "deleted" material because such information, to the extent it even exists, is not reasonably accessible to Liberty. *See* McLaughlin Decl. at ¶ 5, Ex. C at Response to Request No. 29; *see also* Declaration of Malinda Murley, filed concurrently herewith, at ¶ 2-4 ("Murley Decl.").

Of the documents Liberty has produced pursuant to Scotts' Requests in this case, more than 6,400 pages were retrieved from electronic sources (including email, attachments to email, word processing documents spreadsheets, and database entries) and produced in hard copy form. *See* McLaughlin Decl. at ¶ 6. By stark contrast, Scotts' production of documents to Liberty includes just forty-five email messages, which, with their attachments, amount to approximately 175 pages of paper. *See* McLaughlin Decl. at ¶ 7. In response to Liberty's questions about the dearth of email and other Electronic Data produced by Scotts, counsel for Scotts represented that the computer hard drives belonging to former Scotts employees who were involved in the events alleged in the Amended Complaint have since been "wiped out." *See id.* at ¶ 8. Scotts has not produced any Electronic Data to Liberty in electronic format. *See id.* Liberty is in the process of conferring with Scotts' counsel regarding the adequacy of its search and the circumstances under which this data apparently was destroyed by Scotts.

Significantly, although Liberty has produced printed copies of Electronic Data on multiple occasions over the past four months, Scotts has neither objected to any production of documents in paper form nor requested that Liberty make future productions of Electronic Data in its native format. *See* McLaughlin Decl. at ¶ 3.

### E. Scotts' "Proposed ESI Order"

On February 27, 2007, Scotts provided a draft "proposed order governing the collection and production of electronically stored information" to Liberty and asked that Liberty agree to its entry. *See* Ex. H to Meyer Aff. The Proposed ESI Order appended to Scotts' Motion (Ex. 2 to Meyer Aff.), which is substantially identical to the February 27 draft, would require Liberty to provide an outside forensic expert with all computers in use at any time in the last nine years by any of eighteen Liberty employees, of whom eleven are attorneys or paralegals. *See id.* In addition, the Proposed ESI Order would require Liberty to provide Scotts' forensic expert with any "stored media" containing Electronic Data from 1998 to 2002 as well as access to all databases used by Liberty over the past fifty-two years. *See id.* Scotts' Proposed ESI Order lists search terms for the identified Electronic Data varying from the somewhat specific (*e.g.*, "Dispute Resolution Management") to the very general (*e.g.*, "Art," "Bill," "Marsh"). *See id.* The Proposed ESI Order would allow Liberty 10 days to review the presumably voluminous results for responsiveness and privilege, a process to be undertaken at Liberty's own expense. *See id.*

## III. ARGUMENT

### A. Scotts' Motion Must Be Denied Because Liberty Has Already Produced The Electronic Data Scotts Requested

The primary and fundamental flaw in Scotts' Motion is its failure to recognize the fact that Liberty has already fully complied with its document discovery obligations pursuant to Scotts' Requests and the applicable rules. There is no basis for the entry of an order of any sort concerning Electronic Data where, as here, the responding party has produced all responsive,

non-privileged material, including Electronic Data.[2]  As its substantial production of Electronic

Data indicates, Liberty does not dispute that such material is discoverable to the same extent as

information stored in hard copy form.  However, a litigant is only obligated to produce the

information – including Electronic Data – which is actually requested of it and, if applicable, in

the format in which it is requested.  As described above, the amended Federal Rules of Civil

Procedure provide that the requesting party "may specify the form or forms in which

electronically stored information is to be produced."  Fed. R. Civ. P. 34(b).  Rule 34 further

states that "if a request does not specify the form or forms for producing electronically stored

information, a responding party must produce the information in a form or forms in which it is

ordinarily maintained or in a form or forms that are reasonably usable."  *Id.* at 34(b)(ii); *see also*

Fed. R. Civ. P. 34 advisory committee's note on 2006 Amendment (noting propriety of

production of Electronic Data in a form that is "reasonably usable" where the requesting party

does not specify a format).

    While it repeatedly complains that Liberty "has not produced any electronic data in

electronic form," Scotts' Motion fails to note that Scotts' Requests did not ask for production of

any information in electronic form.  *See, e.g.*, Scotts' Motion at 3; Ex. A to Meyer Aff.; Ex. B to

McLaughlin Decl.  Self-evidently, a party is not entitled to discovery it has not requested.

Indeed, from the parties' Rule 26(f) conference and corresponding Report through Liberty's final

production of documents responsive to Scotts' Requests on April 25, 2007, Scotts has never once

asked that Liberty produce Electronic Data in electronic form.  *See* McLaughlin Decl. at ¶¶ 2-3,

---

[2] As set forth above in Section II, the only Electronic Data Scotts requested which Liberty has not undertaken to
review and produce is material which "ha[s] been deleted from Liberty Mutual's network or individual hard drives."
Liberty noted in its response to Scotts' request and in subsequent meet and confer discussions that, pursuant to Rule
26(b)(2)(B), it would not produce "deleted" documents because such material was not reasonably accessible to
Liberty.  *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information
from sources that the party identifies as not reasonably accessible because of undue burden or cost.").  *See* Murley
Decl. at ¶¶ 2-4.

Exs. A, B.  Scotts received Electronic Data from Liberty in the form of printed email, database entries, and word processing documents as early as January 16, 2007 and neither suggested that such information was not "reasonably usable" nor requested that Liberty produce Electronic Data in a different format in future productions.  *See id.* at ¶ 3.

In addition to noting that a responding party is free to produce Electronic Data in any reasonably usable form when the requesting party does not specify format, the Federal Rules are clear that "a party need not produce the same electronically stored information in more than one form."  Fed. R. Civ. P. 34(b)(iii).  In a case Scotts itself cites (Scotts' Motion at 6), the court applied this subsection of newly-amended Rule 34 in denying a motion to compel Electronic Data in native form where the plaintiff had not specified a format and the defendant had already produced the material in printed form.  *See Williams v. Sprint/United Mgmt. Co.*, Civil Action No. 03-2200-JWL-DJW, 2006 WL 3691604, at *2, 7 (D. Kan. Dec. 12, 2006) (citing Rule 34(b)(iii) in finding that "[d]efendant need not re-produce" Electronic Data "in native format" because it had already "produced the transmittal e-mails to Plaintiffs as paper documents").

If, as Scotts now claims, access to Liberty's Electronic Data *in electronic form* were so critical to Scotts' case, it should have specified that format in its document requests.  Moreover, Scotts had – and passed on – opportunities to address this issue during the parties' Rule 26(f) conference and in response to Liberty's initial productions of Electronic Data in paper form.  *See* McLaughlin Decl. at Ex. A, ¶¶ 2-3.  Nowhere in its Motion does Scotts suggest that circumstances have changed such that Liberty's heretofore unobjectionable production of Electronic Data in paper form is now somehow inadequate.  Scotts cannot now ask Liberty to repeat the expensive and time-consuming document collection and production process it just completed because Scotts now wishes to receive Liberty's production in a different format.

Thus, Scotts' contention that Electronic Data has not been received in its native form does not support the relief sought by Scotts here.

**B.      Even If Scotts Were Entitled To Additional Electronic Data Discovery, There Is No Justification For Entry Of The Order Scotts Seeks**

As set forth above, Liberty has completed an extensive production of its responsive Electronic Data that satisfies its discovery obligations.  Even assuming for the sake of argument that Scotts were entitled to *any* additional discovery of Liberty's Electronic Data, there is no basis on which to impose Scotts' Proposed ESI Order.

**1.      Scotts Mischaracterizes The Application Of The 2006 Amendments To This Case**

Scotts' Motion suggests that the 2006 Amendments somehow shifted traditional discovery rights and obligations such that a requesting party is now *entitled* – regardless of the quality or quantity of the responding party's production of Electronic Data – to access its opponent's computer systems and perform its own search for documents.  To the contrary, nothing in the new rules changes the basic discovery premises that (1) a responding party is obliged to search its records (including those stored in electronic format) and produce responsive information,[3] and (2) a requesting party will only be entitled to an order appointing a forensic expert to search the responding party's Electronic Data, if at all, upon a showing of affirmative misconduct in the discovery process.[4]  *Cf. In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir.

---

[3] *See, e.g., Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 WL 1806151, at *1 (N.D. Cal. June 29, 2006) (denying motion to compel forensic examination of plaintiff's computers after plaintiff represented that it had produced all responsive electronic documents because "[t]he mere fact that this case involves electronic data does not change the basic concepts or rules of the discovery process"); *Powers v. Thomas M. Cooley Law Sch.*, No. 5:05-CV-117, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21, 2006) (in denying request for forensic examination of computer system after defendant represented that it had "made a thorough search of its [electronic] records," citing the then-proposed 2006 Amendments in noting that "[t]he discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data").

[4] *See, e.g., Deipenhorst v. City of Battle Creek*, No. 1:05-CV-734, 2006 WL 1851243, at *2 (W.D. Mich. June 30, 2006) (denying motion to compel forensic examination for lack of evidence of discovery misconduct); *see also* Section III.B.2.a., *infra*.

2003) ("Like the other discovery rules, Rule 34(a) allows the responding party to search his records to produce the required, relevant data.  Rule 34(a) does not give the requesting party the right to conduct the actual search.").[5]

Scotts cites the language in the 2006 Amendments permitting a party to serve a request "to inspect, copy, test, or sample...electronically stored information" and hints that an order of the type it seeks here is therefore now expressly authorized by the Federal Rules.  *See* Scotts' Motion at 5, 10-11.  There is no connection between the language cited by Scotts and the relief it seeks.  The issue on this motion is not a request to sample or test Liberty's Electronic Data pursuant to Rule 34, but rather Scotts' push (neither grounded in rule nor precedent) to perform its *own search* of Liberty's Electronic Data when Liberty has *already searched* its records and *already produced* a substantial volume of electronically stored material.  The case law across federal jurisdictions is clear that a party is not entitled to unleash an outside forensic expert on its opponent's computer system absent a clear showing that the responding party has concealed responsive information.[6]

---

[5] Even the cases Scotts itself cites acknowledge that, as recently amended, "Rule 34(a) does not give the requesting party the right to search through all of the responding party's records."  *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *2 (E.D. Mo. Dec. 27, 2006).

[6] It must be noted that, if Scotts were correct in its suggestion that the 2006 Amendments confer an automatic right to forensic inspection on mere request, every litigant in every case would undoubtedly avail itself of direct access to its opponent's computer systems, effecting a dramatic shift in the discovery landscape.  The 2006 Amendments plainly do not contemplate such a result.  *See Powers*, 2006 WL 2711512, at *5 (citing Advisory Committee Notes to "the proposed amendments to Rule 34, scheduled to take effect later this year" for the proposition that "direct inspection of an opponent's computer should be the exception and not the rule"); Fed. R. Civ. P. 34 advisory committee's note on 2006 Amendment (noting that "[t]he addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system" and cautioning that "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing such systems").

>    2.    **Under The Applicable Rules And The Well-Settled Discovery Misconduct Standard, Scotts' Motion Must Be Denied**
>
>          a.    **Entry Of The Type Of Order Scotts Seeks Requires A Showing Of Misconduct In The Discovery Process**

While Scotts' Motion would have the Court believe that the 2006 Amendments provide for the Proposed ESI Order Scotts seeks, the amended rules neither contemplate this type of order nor materially impact the well-established standard for entry thereof. That is, a party seeking direct access to the other side's Electronic Data must make a strong showing justifying the intrusive relief sought. *See Powers*, 2006 WL 2711512, at *5 (denying motion to allow plaintiff's forensic expert to search defendant's computers because, "[i]n the absence of a strong showing that the responding party has somehow defaulted in [its general discovery] obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance").[7]

Indeed, the cases Scotts itself cites demonstrate that the forced imposition of an outside forensic expert is warranted only, if at all, where the moving party demonstrates that the responding party has failed to comply with its duty to produce responsive Electronic Data. *See, e.g., Simon Prop. Group L.P. v. mySimon, Inc*., 194 F.R.D. 639, 641 (S.D. Ind. 2000) (allowing plaintiff to inspect defendant's computer system because plaintiff demonstrated "troubling discrepancies with respect to defendant's document production"); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (appointing computer expert to examine defendant's hard drive and noting that "this process has become necessary due to Defendant's

---

[7] *See also*, *In re Ford Motor Co*., 345 F.3d at 1317 (finding that district court abused its discretion in granting the plaintiff's motion to compel direct access to Ford's computer system absent a showing that Ford failed to comply with discovery requests); *Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) (denying motion to compel because "[i]n the context of computer systems and computer records, inspection or seizure is not permitted unless the moving party can demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld") (quotations and citation omitted); *Williams v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 144, 146 (D. Mass. 2005) (denying motion to appoint computer forensic expert because moving party failed to present any "credible evidence that Defendants are unwilling to produce computer-generated documents").

own conduct of continuously deleting incoming and outgoing e-mails, apparently without regard

for this litigation"); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL

763668, at *4 (D. Kan. Mar. 24, 2006) (permitting imaging of defendants' computer where

defendants' representation that no responsive materials existed on computer was contradicted by

their production of email created on that computer); *Ameriwood*, 2006 WL 3825291, at *1

(granting motion to compel imaging of defendant's hard drive because the court had "cause to

question whether defendants have produced all responsive documents").[8]

Perhaps appreciating the substantial volume of Electronic Data that Liberty has already

produced and the consequent inference of full discovery compliance, Scotts attempts to bolster

its argument in support of its Proposed ESI Order with an offer to pay for the outside forensic

services it would impose on Liberty.  *See* Scotts' Motion at 13.  But a party is not entitled to step

beyond the well-established bounds of discovery merely because it is willing to foot the bill (and

Scotts is not even willing to do that, *see infra* at n.10).  In *Williams*, the court considered and

rejected a proposal similar to the order Scotts advances here, casting aside as irrelevant the

plaintiff's offer to bear the expense of the imaging it sought of the defendant's computer system.

226 F.R.D. at 146 ("[b]efore permitting such an intrusion into an opposing party's information

system – particularly where, as here, that party has undertaken its own search and forensic

analysis and has sworn to its accuracy – the inquiring party must present at least some reliable

information that the opposing party's representations are misleading or substantively

---

[8] In some of the cases Scotts cites, the court's approval of the involvement of an outside forensic expert was based not only on a showing of discovery misconduct, but also on the fact that the claims at issue were computer-specific. *See, e.g., Balboa Threadworks*, 2006 WL 763668, at *3-4 (allowing hard drive imaging "because the alleged infringement in this case is claimed to have occurred through the use of computers to download copyrighted material" and noting that "[c]ourts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature"); *Ameriwood*, 2006 WL 3825291, at *1 (granting motion to compel imaging of defendant's hard drive in part because of the "close relationship between plaintiff's claims and defendants' computer equipment").  This analysis is inapplicable in the instant case where Scotts' allegations are not specific to computerized information and, in fact, largely relate to alleged policies pre-dating the computer era.

inaccurate"). For the same reasons articulated in *Williams*, the Court should deny Scotts' Motion.[9]

> **b.  Scotts' Motion Must Be Denied Because Liberty Has Fully Complied With Its Obligation To Produce Responsive Documents (Including Electronic Data)**

>> **(1)  Scotts' Purported Examples Of Liberty's "Misconduct" Are Baseless**

Scotts' Motion never specifically identifies a single appreciable deficiency in Liberty's production of documents pursuant to Scotts' Requests,[10] let alone true discovery misconduct sufficient to warrant the type of order Scotts seeks. Instead, Scotts engages in logic-defying contortions of the discovery record in an ineffectual attempt to paint Liberty in a negative light.

First, Scotts apparently claims that Liberty's explicitly-stated objection to the production of sensitive personnel files despite its general agreement to produce documents "relating to Scotts" amounts to discovery misconduct. *See* Scotts' Motion at 14. By this same flawed reasoning, Scotts would presumably object to Liberty's refusal to produce *privileged* documents "relating to Scotts" merely because Liberty stated that it would, in general, produce such documents. Moreover, Liberty not only acknowledged the existence of the withheld personnel files, but also produced all portions *relating to Scotts*. *See* McLaughlin Decl. at ¶ 9.

---

[9] Even a cursory review of the incredibly broad Proposed ESI Order belies Scotts' assertion that its offer to pay for vendor expenses somehow renders its proposal "eminently reasonable." Scotts' Motion at 1. As set forth in Sections I and II, *supra*, Scotts proposes to search a significant universe of Electronic Data (largely from sources likely to contain privileged material) for terms as common as "Art" or "Bill" and then foist the presumably voluminous results upon Liberty to review for responsiveness and privilege. Scotts' offer to pay vendor expenses has no bearing on what would be a tremendously time-consuming, expensive, and wasteful exercise for Liberty. Moreover, as *Liberty has already searched, reviewed, and produced its responsive Electronic Data*, the procedure Scotts seeks would be duplicative of the considerable efforts Liberty has already expended in full compliance with its obligations.

[10] Although Scotts' Motion repeatedly asserts that Liberty has not produced any information in electronic format, *see e.g.*, Scotts' Motion at 1, as set forth above, Scotts never requested that Liberty provide the considerable quantity of Electronic Data it has produced in any specific format.

Second, Scotts points to its own misinterpretation – since clarified by Liberty's counsel[11] – of Liberty's production of documents relating to reserves. *See* Scotts' Motion at 13. Scotts claims that Liberty covertly "pulled" reserve documents from production and then "tried to cover it up." *Id*. In fact, Liberty initially redacted reserve information from produced documents and withheld entirely other documents relating solely to reserves on the basis of an express objection set forth in its responses to Scotts' First Document Requests. *See* Ex. C to McLaughlin Decl. at Response to Request No. 6. After subsequently agreeing to produce such documents, Liberty re-produced the documents previously produced with the reserve information no longer redacted and produced for the first time documents relating solely to reserves which were initially withheld in their entirety based on Liberty's objection. *See id*. As Liberty has now produced all responsive documents relating to reserves and as its initial refusal to produce some such documents was based on an explicitly stated and legitimate objection, Scotts' allegation is baseless.

Scotts' third and final attempt to demonstrate discovery misconduct is similarly unavailing. Scotts deems "misconduct" the fact that Liberty produced "loss runs" reflecting print dates prior to the date on which its counsel represented to Scotts that Liberty was still in the process of determining whether it could produce a loss run for the alleged account numbers supplied by Scotts. *See* Scotts' Motion at 15-16. In advancing this and other theories of wrongdoing, Scotts is grasping at straws attempting to rely on documents Liberty in fact has produced as the basis for entry of the onerous Order it seeks. At the time of the exchange with Scotts regarding the loss runs Liberty produced shortly thereafter, counsel for Liberty had not yet been able to confirm whether the loss runs contained all information requested by Scotts or

---

[11] *See* Ex. D to McLaughlin Decl.

whether the loss runs had been generated correctly, and therefore whether they were complete and accurate. *See* McLaughlin Decl. at ¶ 10. Upon confirming that information, Liberty promptly produced the loss runs to Scotts. *See id.*

Each of Scotts' purported examples of Liberty's supposed misconduct is noteworthy only in that it is undisputed that Liberty already has produced each category of documents on which Scotts relies. It is clear that Scotts cannot justify the imposition of the Proposed ESI Order.

### (2) Scotts Groundless Speculation Cannot Justify The Drastic Discovery Measure It Seeks

Notwithstanding Scotts' attempt to clothe it in the language of the newly amended Federal Rules, Scotts' argument in favor of its Proposed ESI Order amounts to a speculative claim that there are more documents out there. As described above, Scotts cannot meet the clearly established and significant threshold required by the courts for the entry of the order it seeks. Without so much as a shred of evidence that Liberty's own thorough search of its paper and electronic records was somehow faulty, Scotts asks the Court to permit it (through a third party vendor acting on Scotts' instructions) to conduct its own search of Liberty's files for the documents Scotts presupposes exist. Indeed, its omnipresent assumption that Liberty has engaged in misconduct is evident in Scotts' conclusory argument as to why it is entitled to the order it seeks: "Scotts *has already determined* that Liberty Mutual committed fraud and engaged in bad-faith conduct." Scotts' Motion at 9-10 (emphasis added). Having already convinced itself (but never otherwise substantiated) that Liberty has "committed fraud and engaged in bad-faith conduct," Scotts naturally assumes that the dearth of any evidence of such misconduct in Liberty's document production is attributable to Liberty's concealing of such documents. Like other courts in this Circuit, the Court should be "loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be

withholding discoverable information." *Powers*, 2006 WL 2711512, at *5 (denying motion for appointment of forensic expert based on moving party's speculation and noting that "[s]uch conduct is always a possibility in any case, but the courts have not allowed the requesting party to intrude upon the premises of the responding party just to address the bare possibility of discovery misconduct").

Neither the recent amendments to the Federal Rules nor the fact that information is now often stored in electronic format does anything to change the well-settled principle that a party must conduct a reasonable search for, and produce, its responsive documents.  Having completed that process, its opponent's unsubstantiated suspicion that additional documents exist will not suffice to permit the opponent to conduct a search of its own.  *See, e.g.*, *Advante*, 2006 WL 1806151, at *1 (denying motion to compel forensic examination of plaintiff's computers for lack of "specific, concrete evidence of concealment or destruction of evidence" because "just as a party would not be entitled to inspect personally an opposing party's offices and filing cabinets simply because it believed that discovery misconduct had occurred, the accusations [defendant] makes here do not justify the remedy it seeks").[12]  To be sure, "[t]he federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have.  Such suspicion is, however, insufficient to warrant granting a motion to compel."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003); *see also Bethea*, 218 F.R.D. at 330 ("A party's suspicion that another party has failed to respond to document requests fully and completely does not justify compelled inspection of its computer systems.");

---

[12] Later developments in the *Advante* case further distinguish between unsubstantiated suspicion of the sort Scotts asserts here and solid evidence of misconduct with respect to production of Electronic Data. Five months after the decision cited above, the court granted Mintel's renewed motion for forensic examination when Mintel presented the court with evidence that "copies of emails were altered" by plaintiff Advante "to downplay or even conceal" a fact central to the case. *See Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006).

*Williams*, 226 F.R.D. at 146 (declining to appoint "a 'neutral expert' in computer forensics in order to help Plaintiff confirm what is at best highly speculative conjecture" that the supposed missing documents exist).  While Scotts may well be disappointed to discover that Liberty's production does not include evidence of the fraud or bad faith Scotts assumes transpired, Scotts' Motion must be denied because Liberty has fully and completely complied with its discovery obligations, leaving no basis – under the new Federal Rules or otherwise – for imposition of the drastic procedure Scotts seeks.

## III.    CONCLUSION

As set forth above, Scotts' Motion must be denied both because it seeks – with no stated basis other Scotts' desire to review Liberty's Electronic Data itself – the entry of an order that is unwarranted both in light of Liberty's full discovery compliance and Scotts' failure even to approach the high standard applicable on this type of motion.  For the foregoing reasons, Liberty respectfully requests that the Court deny Scotts' Motion.


**ORAL ARGUMENT REQUESTED**

Dated:  April 27, 2007                                    Respectfully submitted,

                                                          LIBERTY MUTUAL INSURANCE
                                                          COMPANY

                                                          By its attorneys,

                                                          /s/ Alison E.H. McLaughlin
                                                          Ana M. Francisco
                                                          (admitted *pro hac vice*, MA Bar No. 78725)
                                                          Alison E.H. McLaughlin
                                                          (admitted *pro hac vice*, MA Bar No. 663060)
                                                          ROPES & GRAY LLP
                                                          One International Place
                                                          Boston, Massachusetts  02110
                                                          Tel:  (617) 951-7000
                                                          Fax:  (617) 951-7050

Email:  Ana.Francisco@ropesgray.com
          Alison.McLaughlin@ropesgray.com


Robert C. Buchbinder  (0039623)
CRABBE BROWN & JAMES, LLP
500 South Front Street, Suite 1200
Columbus, Ohio 43215
Tel:  (614) 229-4545
Fax:  (614) 229-4559
Email:  rbuchbinder@cbjlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of:

Liberty Mutual Insurance Company's Memorandum in Opposition to The Scotts Company LLC's Motion to Enter Electronic Discovery Order;

Declaration of Alison McLaughlin in Support of Liberty Mutual Insurance Company's Opposition to The Scotts Company LLC's Motion to Enter Electronic Discovery Order, and exhibits thereto;

Declaration of Kimberly Olson in Support of Liberty Mutual Insurance Company's Opposition to The Scotts Company LLC's Motion to Enter Electronic Discovery Order; and

Declaration of Malinda Murley in Support of Liberty Mutual Insurance Company's Opposition to The Scotts Company LLC's Motion to Enter Electronic Discovery Order

were served on April 27, 2007 by the Court's CM/ECF system on:

> Frank A. Ray
> David J. Butler
> Chester, Willcox & Saxbe, LLP
> 65 East State Street, Suite 1000
> Columbus, Ohio  43215
> fray@cwslaw.com
> dbutler@cwslaw.com
>
> Keith A. Meyer
> Quinn Emanuel Urquhart Oliver & Hedges, LLP
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, California 90017
> keithmeyer@quinnemanuel.com

/s/ Alison E.H. McLaughlin
Alison E.H. McLaughlin